AE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMILIO LOBANO-RIOS | ) |
| | ) |
| | ) |
| vs. | ) No. 04 C 5382 |
| | ) Judge Joan H. Lefkow |
| | ) |
| UNITED STATES OF AMERICA | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner, Emilio Lobano-Rios, has filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In his original petition, Lobano-Rios seeks to vacate his sentence on three grounds: 1) constitutionally ineffective assistance of counsel in violation of the Sixth Amendment; 2) denial of the due process right to appeal in violation of the Fourteenth Amendment; and 3) unconstitutional enhancement of his sentence in violation of the Sixth Amendment, according to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). On March 7, 2005, Lobano-Rios filed an Amendment and Supplemental Pleading to the arguments raised in his original petition. Lobano-Rios argued in his supplemental petition that his sentence also violated the Sixth Amendment because it was not determined by a jury, and federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment, as decided by the Supreme Court in *United States v. Booker* and *United States v. Fanfan*, 125 S. Ct. 738 (2005). For the reasons set forth below, the original and supplemental petitions are denied.

1

## FACTS

On or about November 5, 1980, Lobano-Rios was convicted for attempted murder and voluntary manslaughter and received sentences of fifteen years and seven years, to be served concurrently. Lobano-Rios was released on May 8, 1987. On March 4, 1994, he was convicted of battery and was sentenced to pay restitution, fines, and costs. On October 28, 1994, Lobano-Rios was again convicted of battery and was sentenced to two years probation and payment of restitution and costs.

On October 12, 1995, Lobano-Rios was deported from the United States to Mexico as a result of his conviction for an aggravated felony. On January 22, 2003, however, Lobano-Rios was indicted for being illegally present and found in the United States on or about December 23, 2002 in violation of 8 U.S.C. § 1326(a) and (b)(2). Lobano-Rios pled guilty pursuant to a plea agreement on May 19, 2003. Then, on October 14, 2003, he filed written objections to the U.S. Probation Office's Presentence Report, which ultimately were overruled, and on October 20, 2003, filed a motion to vacate his guilty plea, which was denied. Finally, on October 31, 2003, Lobano-Rios received a 57-month term of imprisonment, a three-year term of supervised release, and a $100 assessment.

During sentencing, the court considered Lobano-Rios's current crime and his prior convictions. Because he had at least one prior conviction for an aggravated felony, Lobano-Rios was subject to an increased penalty under 8 U.S.C. § 1326(b) and, because at least one of his prior convictions was for a "crime of violence," Lobano-Rios was subject to a sixteen-level sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). As a result of these enhancements, Lobano-Rios's base offense level of eight was increased to twenty-four. He was ultimately

2

sentenced at an offense level of twenty-one after receiving a three-level reduction for timely acceptance of responsibility.

On November 3, 2003, Lobano-Rios filed a timely notice of appeal alleging sentencing errors, ineffective assistance of counsel, and error by the court in denying his motion to vacate his guilty plea. On January 5, 2004, counsel for Lobano-Rios filed a motion to withdraw as counsel on the ground that there were no non-frivolous issues for appeal, pursuant to *Anders v. California*, 386 U.S. 738 (1967). On January 5, 2004, the Seventh Circuit wrote Lobano-Rios a letter in English informing him that his attorney had filed an *Anders* brief, and advising him that he had thirty-days to inform the Court of any reasons why his conviction should be set aside or to request an extension of time to respond. The letter also advised Lobano-Rios that if he did not respond within thirty days, the Court could affirm or dismiss his appeal, which would effectively finalize his case. Lobano-Rios did not respond to the Seventh Circuit and, on April 30, 2004, the Seventh Circuit issued an order granting counsel for Lobano-Rios's motion to withdraw and dismissing Lobano-Rios's appeal as frivolous. On August 16, 2004, Lobano-Rios filed this timely motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## DISCUSSION

Relief under § 2255 "is reserved for extraordinary situations." *Hays v. United States*, 397 F.3d 564, 566 (7th Cir. 2005) (citations and internal quotations omitted). A district court must grant a § 2255 petition when the petitioner shows "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Id.* at 566-67 (citations and internal quotations omitted). It is proper to deny a § 2255 motion without an evidentiary

3

hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

I.   **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness;" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

To satisfy the first prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *Fountain v. United States,* 211 F.3d 429, 434 (7th Cir. 2000) (citing *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir. 1995)). The court must then consider whether, in light of all of the circumstances, counsel's performance was outside the range of professionally competent assistance. *Id.* Counsel's performance must be evaluated while remembering that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.*

Lobano-Rios claims that counsel failed to adequately explain the charges against him and the consequences of a guilty plea. He states that "counsel's only concern during the proceedings was to have Petitioner sign his plea agreement and plead guilty." (Pet'r's Reply to Government's Resp. at 4). In addition, Lobano-Rios alleges that due to his own lack of education, he was

4

unable to understand the interpreter's Spanish.

As the government correctly argues in response, the transcript of Lobano-Rios's plea hearing does not support and, in fact, directly contradicts his contentions. Indeed, the transcript demonstrates that through a Spanish language interpreter, Lobano-Rios received, both from his counsel and the court itself, a detailed explanation of the charges against him, the rights he was giving up by pleading guilty, and the consequences of a guilty plea. Lobano-Rios now claims, however, that he could not understand the Spanish language interpreter. Yet, during the plea hearing, the court specifically asked Lobano-Rios if he could understand the translation provided by the Spanish language interpreter, Ms. Fuenes, and Lobano-Rios replied "yes." (Tr. at 10).

During the plea hearing, counsel informed the court that he spent hours explaining the unlawful entry charges to Lobano-Rios, (Tr. at 7), and Lobano-Rios confirmed to the court that counsel had indeed gone over the charges with him. (Tr. at 12). Moreover, the court specifically asked Lobano-Rios if he understood the charges against him and he replied, "Yes, I understand what they are saying against me." (Tr. at 12). As an additional precaution, counsel arranged for Ms. Fuenes to read the entire plea agreement to Lobano-Rios, (Tr. at 8), and Lobano-Rios made clear that he understood the plea agreement. (Tr. at 14).

In addition, Lobano-Rios confirmed that he had discussed the effect of the sentencing guidelines with counsel (Tr. at 19), and that he understood the consequences of pleading guilty and the application of the sentencing guidelines to his case. (Tr. at 18).

Finally, when asked by the court if he was satisfied with his counsel's representation of him, Lobano-Rios stated "I'm satisfied with him and with everybody." (Tr. at 13).

During the plea colloquy, Lobano-Rios admitted that counsel had discussed with him the

5

charges and the consequences of pleading guilty. His responses clearly indicate that he understood the questions he was asked by the court through the Spanish language interpreter. Thus, there is no evidence "that counsel's representation fell below an objective standard of reasonableness; " or (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. Therefore, Lobano-Rios's ineffective assistance of counsel claim must fail.

## II. Fourteenth Amendment Right To Appeal

Lobano-Rios next claims that he was denied his Fourteenth Amendment due process rights to an appeal because his counsel abandoned his appeal by improperly withdrawing from the case.

A criminal defendant has a right to representation by counsel on a first appeal and abandonment by counsel "is a per se violation of the sixth amendment." *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994). In addition, "a criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that he or she is of the opinion that there is no merit to the appeal." *Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Anders v. California*, 386 U.S. 738 (1967). Counsel may, however, withdraw if certain procedural safeguards are observed. Counsel must first conduct a conscientious examination of the case and only request leave to withdraw if he is of the opinion that the case is wholly frivolous. *Penson*, 488 U.S. at 80. Next, counsel's request must be accompanied by an "*Anders* brief" that specifies "anything in the record that might arguably support the appeal." *Id.* Then the appellate court must conduct "a full examination of all the proceeding[s] to decide whether the case is wholly frivolous." *Id.* Finally, if the appellate court concludes that there are no non-frivolous issues for

appeal, it may consider the appeal on the merits without the assistance of counsel. *Id.*

In the present case, Lobano-Rios's counsel filed a timely notice of appeal and then followed the proper procedures for withdrawal. On January 5, 2004, he filed an *Anders* brief detailing any issues that might arguably support Lobano-Rios's appeal. Then, on January 5, 2004, the Seventh Circuit notified Lobano-Rios that his attorney had filed an *Anders* brief and provided Lobano-Rios with an opportunity to respond by raising any issues he thought were non-frivolous. Lobano-Rios failed to respond and the Seventh Circuit subsequently concluded that there were no non-frivolous issues for appeal. On April 30, 2004, the Seventh Circuit granted counsel's motion to withdraw and dismissed Lobano-Rios's appeal as frivolous.

Lobano-Rios's counsel and the Seventh Circuit followed all of the constitutionally required procedures for withdrawal and dismissal. Lobano-Rios may well have had, as he claims, difficulty understanding the import of the *Anders* brief and the Seventh Circuit's accompanying instructions, as well as obtaining assistance in preparing a response, but these difficulties do not invalidate the Seventh Circuit's dismissal of his appeal. While it is perhaps arguable that additional procedures are required to fully protect a non-English speaking, indigent petitioner's right to an appeal, at present, neither the Constitution nor the Seventh Circuit provides for them. Thus, since all of the constitutionally appropriate procedures for his counsel's withdrawal and the dismissal of his appeal were followed, Lobano-Rios has no claim that he was denied his constitutional right to due process.

## III. Sixth Amendment Right To a Jury Trial Under *Apprendi* and *Blakely*

Third, Lobano-Rios alleges that his sentence violated the Supreme Court's opinions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S.

7

Ct. 2531 (2004). Specifically, he alleges that the enhancement of his sentence from a base-level-eight to a level twenty-four during sentencing violated the Sixth Amendment because the sentence enhancement was not determined by jury trial. While the government incorrectly responds that *Blakely* does not apply to federal sentencing guidelines, *see United States v. Booker*, 375 F.3d 508, 510-11 (7th Cir. 2004), they correctly contend that sentence enhancements based on prior convictions need not be proven to a jury beyond a reasonable doubt and that Lobano-Rios forfeited his *Blakely* argument by not raising it during sentencing.

In *Almendarez-Torres v. United States*, the Supreme Court ruled that, under the statute which Lobano-Rios was convicted, 8 U.S.C. § 1326(b), prior convictions are a sentencing factor, not an element of the crime. 523 U.S. 224, 226-27 (1998). This holding was left undisturbed in *Apprendi*, where the Supreme Court specifically excluded prior convictions from the rule that facts used to increase a defendant's penalty beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. 530 U.S. at 490. Thus, judicial factfinding with respect to prior convictions is not prohibited under *Apprendi*.

In *Blakely*, the Supreme Court applied the rule announced in *Apprendi*, but, once again, distinguished prior convictions from facts requiring determination by a jury beyond a reasonable doubt. 124 S. Ct. at 2536. *See also United States v. Washington*, 417 F.3d 780, 788 (7th Cir. 2005) ("prior convictions need not be proven to a jury beyond a reasonable doubt"); *Booker*, 375 F.3d at 510 ("*other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added) (citations and internal quotations omitted).

In the present case, Lobano-Rios pled guilty to illegally reentering the United States after

8

having been deported subsequent to a conviction for an aggravated felony. Prior to deportation, Lobano-Rios had been convicted of attempted murder, voluntary manslaughter, and battery. These prior convictions subjected Lobano-Rios to an increased maximum penalty under 8 U.S.C. § 1326(b) and, because murder and voluntary manslaughter are "crimes of violence," to a sixteen-level sentence enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Because Lobano-Rios's sentence enhancement was based solely on his prior convictions, *Apprendi* and *Blakely* are not applicable.

The government is likely also correct in asserting that Lobano-Rios forfeited his *Blakely* objection by failing to raise it during sentencing, *Washington*, 417 F.3d at 788, but the court need not address this issue since the sentencing enhancement was based on prior convictions, which need not be proven to a jury beyond a reasonable doubt, thereby defeating Lobano-Rios's claims under *Apprendi* and *Blakely*.

### D. Sixth Amendment Right To a Jury Trial Under *Booker* and *Fanfan*

Finally, in his supplemental pleading, Lobano-Rios argues that his sentence violated the Supreme Court's holding in *United States v. Booker* and *United States v. Fanfan*, 125 S.Ct. 738 (2005) because a jury did not determine, beyond a reasonable doubt, the facts giving rise to the sixteen-level enhancement of his sentence under § 2L1.2(b)(1). In *Booker* and *Fanfan*, the Supreme Court held that a defendant has a right to a jury trial on any disputed factual subject that increases his maximum punishment. *McReynolds v. United States*, 397 F.3d 479, 480 (7th Cir. 2005). The Seventh Circuit has concluded, however, that *Booker* is not retroactive on collateral review. *See id.* at 481. The Seventh Circuit expressly stated that "*Booker* does not apply

retroactively to criminal cases that became final before its release on January 12, 2005." *Id.* Lobano-Rios's conviction and sentence became final before the *Booker* decision was issued. Therefore, it cannot serve as a basis for § 2255 relief under these circumstances.

IV. **Order**

For the reasons stated above, the Court denies Lobano-Rios's § 2255 petition to vacate, set aside, or correct his sentence [#1], including his amended and supplemental petition [#9].

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: October 11, 2005